**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION,**

**Civil Action 2:13-md-2433**
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth Preston Deavers**

**This document relates to:**

***Kenneth Vigneron, Sr. v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-136**

**DISPOSITIVE MOTIONS ORDER NO. 20**

**Defendant's Motion For Summary Judgment Related to Cancerphobia Damages and Fear of Developing Other Probable Link Diseases**

This matter is before the Court on Defendant's Motion for Summary Judgment on the Cancerphobia Portion of Negligence Damages and on Fear of Developing Other Probable Link Diseases (ECF No. 4656), Plaintiff's Memorandum in Opposition to Defendant's Motion (ECF No. 4687), and Defendant's Reply in Support of its Motion (ECF No. 4698). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

**I.**

The cases that make up this multidistrict litigation ("MDL") are a subset of cases that originated in *Leach v. E. I. Du Pont de Nemours & Co.*, No. 01-C-608 (W. Va. Cir. Ct. (Wood County Aug. 31, 2001). Plaintiff Kenneth Vigneron Sr., alleges that he is a member of the class ("*Leach* Class") of individuals who are permitted under a contractual agreement ("*Leach*

Settlement Agreement") to file claims against Defendant E. I. du Pont de Nemours and Company ("DuPont") based on injuries that they believe were caused by their exposure to ammonium perfluorooctanoate ("C-8") that was discharged from DuPont's Washington Works plant. (*Leach* Settlement Agreement ("S.A."); ECF No. 820-8.)

The *Leach* Class is defined as a group of individuals who, "for the period of at least one year," has "consumed drinking water containing .05 ppb or greater of C-8 attributable to releases from [DuPont's] Washington Works" plant from any of the "six specified Public Water Districts" or any of the "Covered Private Sources" identified in the *Leach* Settlement Agreement. (S.A. § 2.1.1.) The *Leach* Settlement Agreement established a panel of epidemiologists ("Science Panel") to study human disease among the *Leach* Class. *Id.* §§ 12.2.1, 12.2.2. Until the Science Panel reached its conclusions and issued its Findings, the claims of the *Leach* Class members were stayed for the seven years in which the Science Panel engaged in its work..

In 2011 and 2012, the Science Panel delivered Probable Link Findings for six human diseases ("Linked Diseases"): kidney cancer, testicular cancer, thyroid disease, ulcerative colitis, diagnosed high cholesterol (hypercholesterolemia), and pregnancy-induced hypertension and preeclampsia. The *Leach* Settlement Agreement defines "Probable Link" as follows:

> "Probable Link" shall mean that based upon the weight of the available scientific evidence, it is more likely than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members.

(S.A. § 1.49.)

For the *Leach* Class Members for whom the Science Panel determined that it was more likely than not there is a link between their exposure to C-8 and their Linked Disease (Probable Link Finding), DuPont agreed not to contest whether C-8 is capable of causing their Linked Disease (general causation). *Id.* § 1.25 (defining general causation as "it is probable that

exposure to C-8 is capable of causing a particular Human Disease"). DuPont retained the right to contest that, although it is probable that exposure to C-8 is capable of causing the Class Member's Linked Disease (not contesting general causation), it is not probable that exposure to C-8 caused the Linked Disease in that particular Class Member (contesting specific causation). *Id.* § 1.60 (defining specific causation as "it is probable that exposure to C-8 caused a particular Human Disease in a specific individual").

The *Leach* Class Members who suffer or suffered from a Linked Disease are permitted under the *Leach* Settlement Agreement to pursue their personal injury and wrongful death claims that "relate to exposure to C-8 of Class Members." (S.A. § 3.3.) Once the *Leach* Class Members with Linked Diseases began filing cases, DuPont moved the United States Judicial Panel on Multidistrict Litigation for centralization of individual actions pursuant to 28 U.S.C. § 1407. The Judicial Panel granted DuPont's request and on April 9, 2013, it transferred this MDL to this Court. More than 3500 cases have been filed in the MDL and are currently pending before this Court.

The Court has tried two bellwether cases. The first, chosen by DuPont, was a kidney cancer case brought by Carla Marie Bartlett (Case No. 2:13-cv-170), and the plaintiffs picked a testicular cancer case filed by David Freeman (Case No. 2:13-1103), which was tried second. Mr. Vigneron's case is the first non-bellwether case selected for trial, which is scheduled for November 14, 2016.

By way of background, Mr. Vigneron was admitted to surgery on April 23, 1997, for a left radical orchiectomy to remove his left testicle. (Expert Rep. of Robert Bahnson, M.D., F.A.C.S. at 4, ECF No. 4640-2.) After the surgical procedure, the pathology report revealed a 2.7 x 2 x 2.3 centimeter embryonal cell carcinoma, *i.e.*, testicular cancer. A CAT scan following

the orchiectomy demonstrated that the tumor had metastasized to the retroperitoneal lymph nodes. Mr. Vigneron consulted with two oncologists, and was ultimately advised to undergo intravenous chemotherapy. Mr. Vigneron was administered three full cycles of chemotherapy with cisdiamminedichlorplatinum II (cDDP), etoposide, and belomycin. Mr. Vigneron then underwent approximately ten years of cancer surveillance.

DuPont has moved for summary judgment "on any claim for damages asserted by Trial Plaintiff Kenneth Vigneron Sr. based on alleged 'cancerphobia' and/or a speculative fear of developing other Probable Link diseases in the future." (Def.'s Mot. at 1.) That Motion is ripe for review.

**II.**

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398

U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**III.**

In Dispositive Motions Order No. 3 ("DMO 3"), the Court determined that plaintiffs who were injured in Ohio, as Mr. Vigneron alleges, would have their cases tried under Ohio law. (DMO 3, ECF No. 3551.) Ohio law permits recovery for emotional distress that manifests itself as cancerphobia. "Cancerphobia is a claimed present injury consisting of mental anxiety and distress over contracting cancer in the future, as opposed to risk of cancer, which is a potential physical predisposition of developing cancer in the future." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1012 (6th Cir. Ohio 1993) (quoting *Lavelle v. Owens–Corning Fiberglas Corp.*, 30 Ohio Misc. 2d 11 (1987)). "Increased fear of cancer, to be compensable, means that [a] . . . plaintiff is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself in mental distress." *Lavelle*, 30 Ohio Misc. 2d at 15.

Mr. Vigneron seeks to recover damages for mental distress and anxiety over contracting cancer in the future that he claims are directly related to his testicular cancer and chemotherapy regimen. DuPont contends that (A) "Mr. Vigneron cannot recover for 'cancerphobia' as a

separate and distinct element of his claim for compensatory damages because this presents a near certain risk of duplicative damages, and effectively allows him to pursue an independent emotional distress claim in contravention of Ohio law"; (B) "Even if Mr. Vigneron could pursue damages based on any independent 'cancerphobia' theory, that claim for damages still fails as a matter of law as there is no reliable scientific evidence that Mr. Vigneron is at an increased statistical likelihood of developing a future cancer, much less that he has an awareness of any such increased statistical likelihood that has resulted in a reasonable apprehension manifesting itself in mental distress"; and (C) "Mr. Vigneron cannot recover for any alleged fear of developing other, undiagnosed Probable Link diseases [because] such a claim was not timely disclosed, would be wholly speculative, and fails for a lack of proof in any event." (Def.'s Mot. at 1–2.)

**A. Cancerphobia Damages**

DuPont highlights this Court's previous decision that explained that Ohio does not recognize a stand-alone negligent infliction of emotional distress claim when there is a contemporaneous physical injury. (DMO 14, ECF No. 4458); (*Loudin v. Radiology & Imaging Servs.*, 128 Ohio St.3d 555, Syllabus Point 2 (Ohio 2011) ("Emotional distress stemming directly from a physical injury is not a basis for an independent cause of action for the negligent infliction of emotional distress."). Rather, as explained in detail in DMO 14, the claimed emotional distress is an element of compensatory damages:

> A plaintiff may also obtain recovery for cancerphobia when the emotional distress stems directly from a negligently-inflicted physical injury for which she seeks recovery in negligence if she can show that she "is aware that [s]he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself as emotional distress." *Lavelle*, 30 Ohio Misc. 2d at syllabus ¶ 2.

*Id.* at 8. The Ohio Supreme Court has held that "the growth and metastasis of cancer are cognizable physical injuries." *Loudin v. Radiology & Imaging Servs., Inc.*, 128 Ohio St. 3d 555, 560 (2011). The *Loudin* court clarified:

> Although tumor enlargement and involvement of the lymph nodes might not require radically different treatment, a plaintiff need only show some slight injury for the question of damages to go to the jury. In *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 134, fn. 3, while comparing negligent-infliction-of-emotional-distress claims with personal-injury claims, this court explained:
>
>> "Courts have allowed recovery for emotional distress accompanied by the slightest injury. 'When there is evidence of any injury, no matter how slight, the mental anguish suffered by plaintiff becomes an important element in estimating the damages sustained.' *Clark Restaurant Co. v. Rau* (1931), 41 Ohio App. 23, 26. In *Wolfe v. Great A & P Tea Co.* (1944), 143 Ohio St. 643, the plaintiff was allowed to recover for mental suffering, after eating food contaminated with worms, if any physical injury was proven. *See also Ward Baking Co. v. Trizzino* (1928), 27 Ohio App. 475, 161 N.E. 557."

*Id.* at 561 (parallel citations omitted).

DuPont argues that Mr. Vigneron makes an improper "backdoor attempt to assert an emotional distress claim under the guise of 'cancerphobia damages,' [which] is entirely improper, as there is no evidence that he suffers from any phobia, and any claimed mental distress is merely ***one of several factors*** a fact finder may consider in deciding the amount of compensatory damages, and not a separate and additional form of damages." (Def.'s Mot. at 5.) DuPont further contends:

> Although Mr. Vigneron ostensibly recognizes that a standalone emotional distress claim is not available to him here, . . . his specific causation expert report makes clear that he intends to "backdoor" these claims by fashioning "cancerphobia" damages as a separate and distinct element of his compensatory damages claim. *See* Bahnson Report at 3-4. . . .
>
> Allowing Mr. Vigneron to introduce evidence to specifically highlight his "cancerphobia" theory would invite duplicative damages for pain and suffering, and allow him to effectively pursue an independent emotional distress claim (and to

> do so without meeting the stringent requirement to show "severe and debilitating" emotional distress).

*Id.* 5–6 (citing, *inter alia*, *Cantrell v. GAF Corp.*, 999 F.2d at 1012 for the proposition that fear of developing cancer is an element of compensatory damages). DuPont's arguments are not well taken.

First, the Court disagrees with DuPont that "highlighting" cancerphobia would invite duplicative damages. Ohio law is clear that to recover for emotional distress directly related to his testicular cancer, Mr. Vigneron must show that he is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself as emotional distress. Mr. Vigneron must be permitted, indeed is required, to offer evidence of his claimed cancerphobia so that a jury can determine whether or not he has proven he is entitled to those requested damages. The jury will be instructed on the proper calculation of damages, and "juries ordinarily are presumed to follow the court's instructions." *Simmons v. South Carolina*, 512 U.S. 154, 171 (1994) (citations omitted); *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1047 (6th Cir. 1996) ("We find it error to infer that the jury did not or could not follow the judge's clear instructions . . . .").

Second, while the Court agrees that "any claimed mental distress is merely ***one of several factors*** a fact finder may consider in deciding the amount of compensatory damages," Ohio requires a plaintiff who wishes to recover for mental anxiety and distress over contracting cancer in the future to meet additional evidentiary burdens. The plaintiff may not, as DuPont appears to suggest, simply offer evidence to the jury that he suffers from emotional distress because he is fearful of potential future cancer. The evidentiary burden is higher than that. A plaintiff must show by a preponderance of the evidence that he "is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable

apprehension which manifests itself as emotional distress." *Lavelle*, 30 Ohio Misc. 2d at syllabus ¶ 2.

Third, DuPont's contention that Mr. Vigneron is not being held to the "stringent requirement to show 'severe and debilitating' emotional distress" misses the mark. The Court has made a detailed analysis of Ohio law with regard to the severe and debilitating standard and has explained that Ohio ***does not require*** a plaintiff to meet that standard when he suffers a contemporaneous physical injury. (DMO 12 at 110–16, ECF No. 4306); (DMO 14 at 4–14, ECF No. 4458).

Fourth, and last, DuPont's suggestion that Mr. Vigneron must establish that he suffers from a phobia mistakes the proper inquiry. Mr. Vigneron must show that he suffered compensable emotional distress, which Ohio courts have found may include cancerphobia. The *Lavelle* court explained:

> Examples of serious emotional distress are traumatically induced neurosis, psychosis, chronic depression and phobia. *Paugh v. Hanks*, *supra*, at 78. Cancerphobia falls within this definition.

*Lavelle*, 30 Ohio Misc. 2d at 15. Thus, Mr. Vigneron is not required to show that he suffers from a phobia to be compensated for his emotional distress. Instead, he must prove by a preponderance of the evidence that he is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself as emotional distress.

## B. Evidence of Cancerphobia

DuPont argues that there are no issues of material fact with regard to Mr. Vigneron's alleged cancerphobia. DuPont cites to Mr. Vigneron's testimony and the testimony and expert report of Robert Bahnson, M.D., F.A.C.S., Mr. Vigneron's specific causation expert, to support

its position that there is no admissible evidence of Mr. Vigneron's alleged mental distress based on cancerphobia. This Court, however, disagrees.

With regard to Dr. Bahnson, DuPont has moved for exclusion of his testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Incorporated*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence. (Def.'s Mot. to Exclude the Op. and Testimony of Specific Causation Expert Dr. Robert Bahnson, ECF No. 4657.) In its decision on DuPont's *Daubert* motion, this Court found admissible Dr. Bahnson's opinion that "[a]s a result of his testicular cancer, there is an increased statistical likelihood that Mr. Vigneron will develop testicular cancer in his remaining testicle, [and] other cancers . . . ." (Evidentiary Motions Order No. 9 at 31–33, ECF No. 4777) (citing Bahnson Report at 3, ECF No. 4640-2.) The Court also admitted Dr. Bahnson's opinion that because of the three cycles of chemotherapy to which Mr. Vigneron was subjected after the operation to remove his cancerous testicle, he is at an increased risk of developing "acute myelogenous leukemia, and myelodysplasia, (*i.e.*, cancer)" *Id.* at 33 (citing Bahnson Rep. at 7, ECF No. 4640-2.)

Further, Mr. Vigneron points to the following deposition testimony as examples of his *awareness* of his increased statistical likelihood of developing cancer:

> Q. Since you have gone over 19 years without a recurrence of testicular cancer, do you have a fear that it's going to return?
>
> A. Constant. You don't ever get rid of that cell. It's in your body forever.

(June 28, 2016 Vigneron Dep. at 104, ECF No. 4641-1.)

> Q. Has a doctor ever told you that you have a likelihood that your testicular cancer will return?
>
> A. I think, if I can remember when it was explained to me, that if it ever came back anywhere, it would come to the lungs first.

*Id.*

Q. Earlier today I believe you testified that you have a fear of your cancer returning. Is that correct?

A. Yes

*Id.* at 109.

Q. I believe you also testified that you had a fear of the cancer returning because of the C8 in your blood. Is that right?

A. Correct.

*Id.* at 110.

While Mr. Vigneron did not use the phrase "statistical increased likelihood of developing cancer in the future," his testimony reflects his awareness that he is at a statistically increased likelihood of developing cancer in the future compared to the general population or his pre-cancer self. He testified that he is aware that the cancer cell that is in his body never leaves. He knew the cancer cells could cause cancer in his lungs because a doctor told him that they could, and the fact that his testicular cancer metastasized to that area. He also testified that he knows that he has C-8 in his blood and, he obviously knows that he had a Linked Disease. Because he is aware that he has cancer cells in his body, has had testicular cancer which is a Linked Disease, has had the cancer metastasize to his lung area, and has had a decade of follow-up care to detect any cancer, Mr. Vigneron has raised genuine issues of material fact as to whether he was aware that he is statistically more likely to suffer a recurrence of testicular cancer or to have a new cancer.

As to Mr. Vigneron's burden to show that from his awareness of his statistically increased risk of developing cancer sprang a *reasonable apprehension*, which manifests itself in mental distress, Mr. Vigneron offers the following:

Mr. Vigneron testified that he was prescribed medication to help with the chronic pain and the mental anguish caused by his cancer, which he has to cope with on a

> daily basis (Vigneron Dep. Tr. at 75:14-18; 103:5-7), and that he is constant fear of his cancer returning. (*Id.* at 104:3-7). Mr. Vigneron also testified that he suffered depression as a result of his cancer and cancer treatments (*id.* at 102:24-103:1, 20-22), and has a fear that "something's going to go wrong again." (*Id.* at 117:13.

(Pl.'s Mem. in Opp. at 7.)

DuPont contends that this testimony is insufficient "because these claimed fears are not based on any information from medical professionals and/or any informed research (*see* Vigneron Depo. at 105:1-6), they are purely speculative and ***not reasonable*** as a matter of law." (Def.'s Reply at 9.) DuPont relies on *Perry v. Dept. of Rehab. and Corr.*, 2013 Ohio App. LEXIS 3992, at *6 (Ohio App. Sept. 5, 2013) for the proposition that "unfounded fear of cancer is not actionable because '[v]irtually everyone has some greater or lesser fear of getting cancer.'"

Mr. Vigneron, however, is simply not comparable to the general population who has some greater or lesser fear of getting cancer. Mr. Vigneron actually suffered from cancer, which metastasized to his lymph nodes and required removal of his testicle, three rounds of chemotherapy, and a decade of follow up care. "Reasonable in this context is not equivalent to probability or certainty, but is for a fact-finder to determine." *Lavelle*, 30 Ohio Misc. 2d at 15.

At this juncture, the Court is prohibited from weighing the evidence or making credibility determinations and must only determine whether Mr. Vigneron has raised any genuine issue for trial. *See Anderson*, 477 U.S. at 255. The Court concludes that Mr. Vigneron has presented evidence from which a reasonable jury could find that he was aware that he possesses an increased statistical likelihood of developing cancer, and from this knowledge and his experience with cancer and chemotherapy, sprang a reasonable apprehension which manifested itself as emotional distress. Consequently, DuPont is not entitled to summary judgment on Mr.

Vigneron's request for damages for his mental anxiety and distress over contracting cancer in the future.

**C. Other Probable Link Diseases**

Mr. Vigneron maintains that "Dr. Bahnson's testimony confirms the reasonableness of Mr. Vigneron's fear, including but not limited to Mr. Vigneron's increased statistical likelihood of developing testicular cancer again as a result of his prior history of testicular cancer, leukemia resulting from his chemotherapy regimen, and/or testicular and/or kidney cancer as a result of his C-8 exposure." (Pl.'s Mem. in Opp. at 10) (citing to Bahnson Report at 3–4 , 7; Bahnson Dep. at 159–64; Vigneron Dep. at 104, 110.) Mr. Vigneron continues, pointing out that Dr. Bahnson *specifically* concluded that Mr. Vigneron "*has an increased statistical likelihood of developing each of the other Probable Linked diseases*." *Id.* (citing Bahnson Report at 7) (emphasis added by the plaintiff).

In its motion, DuPont asks that "[a]ny claim that Mr. Vigneron suffers from emotional distress related to fear of developing other undiagnosed Probable Link diseases as a result of his historic C8 exposure is also wholly unsupported and should be dismissed." (Def.'s Mot. at 11.) DuPont argues, *inter alia*, that:

> [The] Court has already rejected similar attempts by prior plaintiffs to inject speculative claims about developing undiagnosed probable link conditions in the future. *See* Tr. of August 24, 2015 Motion *in Limine* Hearing [*Bartlett* ECF No. 4209] at 52:7-9 (finding that because "nobody has drilled down as to what your chances are of getting these conditions," claims related to undiagnosed probable link conditions are ***"so speculative"***); *id.* at 54:8-11 ("[I]f we're talking about ulcerative colitis, [or] any of the other conditions found by the science panel she's not been diagnosed with, ***those are out***.") (emphasis added); Tr. of September 9, 2015 Final Pretrial Conf. [*Bartlett* ECF No. 4225] at 22:20-24 ("I think I ruled on this in motions *in limine*, if they were to come in, you're not making any claim, for example thyroid diseases, and ***your argument wouldn't be that Mrs. Bartlett is going to be entitled to damage***.").

As the Court explained when it previously ruled out these claims:

> "[I]t seems to me we're in the range of speculation if we get into that. It is a condition she doesn't have and hasn't been diagnosed, maybe she's at risk of, but a jury can't really fathom that in when there isn't anything more to connect her to those conditions."

> *See* Tr. of August 24, 2015 Motion *in Limine* Hearing [*Bartlett* ECF No. 4209] at 53:20-23.

(Def.'s Reply at 8) (emphasis added by DuPont). DuPont's arguments are well taken.

Here, Mr. Vigneron does not offer evidence to show that his alleged anxiety or fear of developing any other Probable Link diseases *relate to the physical injuries* for which he seeks to hold DuPont liable. The evidence offered regarding other Probable Link diseases is that he has a statistical increased likelihood of developing it not because of his prior testicular cancer, but because of his C-8 exposure. (Pl.'s Mem. in Opp. at 10) (citing to Bahnson Report at 3–4 , 7; Bahnson Dep. at 159–64; Vigneron Dep. at 104, 110) ("Mr. Vigneron's fear, including but not limited to Mr. Vigneron's increased statistical likelihood of developing testicular cancer again as a result of his prior history of testicular cancer, leukemia resulting from his chemotherapy regimen, *and/or testicular and/or kidney cancer as a result of his C-8 exposure*.")

Thus, for the same reasons that the Court excluded evidence related to undiagnosed Linked Diseases in *Bartlett*, it does so in *Vigneron*. The alleged mental distress and anxiety must be directly connected to the physical injury, (*i.e.*, here, Mr. Vigneron's cancer and metastasis of the cancer). Accordingly, DuPont has shown that it is entitled to summary judgment on this portion of Mr. Vigneron's request for damages.

## IV.

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment on the Cancerphobia Portion of Damages and Fear of Developing Other Probable Link Diseases. (ECF No. 4656.) Specifically, DuPont's motion is

granted with regard to its request to exclude alleged mental anxiety damages related to fear of developing undiagnosed Probable Link diseases, and the motion is otherwise denied.

**IT IS SO OREDERED.**

11-7-2016

**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**