UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE
NEMOURS AND COMPANY C-8
PERSONAL INJURY LITIGATION,

> Civil Action 2:13-md-2433
> CHIEF JUDGE EDMUND A. SARGUS, JR.
> Magistrate Judge Elizabeth Preston Deavers

This document relates to:

*Kenneth Vigneron, Sr. v. E. I. du Pont de Nemours and Company*, Case No. 2:13-CV-136

## EVIDENTIARY MOTIONS ORDER NO. 11

### Plaintiff's Motion to Exclude Opinion of Expert Witness Dominik D. Alexander

This matter is before the Court on Plaintiff's Motion to Exclude the Opinions and Testimony of Defense Expert Dominik D. Alexander, Ph.D., M.P.H. (ECF No. 4652), Defendant's Memorandum in Opposition to Plaintiff's Motion (ECF No. 4680), and Plaintiff's Reply in Support of his Motion (ECF No. 4694). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion.

### I.

Plaintiff Kenneth Vigneron, Sr. alleges that he is a member of a class ("*Leach* Class") of 3500-plus individuals who are permitted under a contractual agreement ("*Leach* Settlement Agreement") to file claims for personal injury or wrongful death against Defendant E. I. du Pont de Nemours and Company ("DuPont") based upon injuries that they believe were caused by their exposure to ammonium perfluorooctanoate ("C-8" or "PFOA") discharged from DuPont's Washington Works plant. (*Leach* Settlement Agreement ("S.A."); ECF No. 820-8.) In 2005,

the *Leach* Settlement Agreement established a panel of epidemiologists ("Science Panel") to study human disease among the *Leach* Class. *Id*. §§ 12.2.1, 12.2.2. In 2011 and 2012, the Science Panel issued the conclusions to their study in Probable Link Findings for six human diseases ("Linked Diseases"): kidney cancer, testicular cancer, thyroid disease, ulcerative colitis, diagnosed high cholesterol (hypercholesterolemia), and pregnancy-induced hypertension and preeclampsia.

The *Leach* Settlement Agreement requires application of the Probable Link Findings to the individual plaintiffs in this multidistrict litigation ("MDL") who prove that they are members of the *Leach* Class and that they suffer or suffered from a Linked Disease. Application of the Probable Link Finding establishes that, "based upon the weight of the available scientific evidence, it is more likely than not that there is a link between exposure to C-8 and [the Linked Disease] among Class Members," and DuPont is prohibited from challenging whether "it is probable that exposure to C-8 is capable of causing" that Linked Disease. (S.A. at §§ 1.49, 3.3, 12.2.1, 12.2.2.) DuPont retained the right to contest whether "it is probable that exposure to C-8 caused" the Linked Disease, and to assert any other defenses not barred by the *Leach* Settlement Agreement. (S.A. §§ 1.60, 3.3.)

As does Mr. Vigneron, all of the plaintiffs in this MDL allege that they are members of the *Leach* Class and that they suffer or suffered from a Linked Disease. The Court has tried two bellwether cases. The first, chosen by DuPont, was a kidney cancer case brought by Carla Marie Bartlett (Case No. 2:13-cv-170), and the plaintiffs picked a testicular cancer case filed by David Freeman (Case No. 2:13-1103), which was tried second. Both of those cases resulted in a jury verdict in the plaintiffs' favor. Mr. Vigneron's case is the first non-bellwether case selected for trial, which is scheduled for November 14, 2016.

2

The claims of all of the plaintiffs in this MDL arise from DuPont's alleged negligence and/or recklessness in releasing the C-8 from the Washington Works plant, which contaminated six water districts that are located in Ohio and West Virginia.  All of the plaintiffs' claims are subject to either the law of Ohio or of West Virginia.  (Dispositive Motions Order No. (DMO") 3, ECF No. 3551.)  Ohio law governs Mr. Vigneron's case.

To establish a claim for negligence in Ohio, a plaintiff must allege facts showing: (1) the defendant owed him a duty of care; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury.  *Menifee v. Ohio Welding Prods., Inc.*,15 Ohio St.3d 75, 77 (1984).  The existence of a duty derives from the foreseeability of the injury, which usually depends upon the defendant's knowledge.  *Menifee*, 15 Ohio St. 3d at 77.  The "test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act."  *Id*.

In its defense, DuPont avers that before the Probable Link Findings were issued, it "neither knew, nor should have known, that any of the substances to which [Mr. Vigneron] was allegedly exposed were hazardous or constituted a reasonable or foreseeable risk of physical harm by virtue of the prevailing state of the medical, scientific and/or industrial knowledge available to DuPont at all times relevant to the claims or causes of action asserted by [Mr. Vigneron]."  (Def.'s Answer to Vigneron Compl. ¶ 227; ECF No. 47.)  DuPont further answered that "all conduct and activities of DuPont related to matters alleged in the Complaint conformed to industry standards based upon the state of medical, scientific and/or industrial knowledge which existed at the time or times that [Mr. Vigneron] is alleged to have been exposed."  *Id.* ¶¶ 232, 235.

DuPont and the MDL plaintiffs have retained experts to opine on whether DuPont

conformed to the industry standards based upon the state of the medical, scientific and/or

industrial knowledge available to DuPont during the relevant time period. DuPont has offered

and in some instances has utilized for trial: Shane A. Snyder, Ph.D; Thomas C. Voltaggio, B.S.,

M.A.; Douglas L. Weed, M.D., M.P.H., Ph.D,; Marianne L. Horinko, B.S., J.D., and, Robert W.

Rickard, Ph.D, D.A.B.T. The plaintiffs have offered and in some cases have called at trial:

Barry S. Levy, M.D., M.P.H.; Michael B. Siegel, M.D., M.P.H.; Stephen E. Petty, P.E., C.I.H.,

C.S.P.; Steven Amter, B.S., M.S.; James S. Smith, Ph.D., CPC.; and, Carrie Redlich M.D.,

M.P.H. The parties refer to these witnesses generally as "corporate conduct" experts and have

brought the issue of whether these experts offer testimony that is admissible in numerous

motions, on which this Court has issued several decisions. (Evidentiary Motions Order No.

("EMO") 2, ECF No. 4129); (EMO 3, ECF No. 4178); (EMO 5, ECF No. 4532); (EMO 6, ECF

No. 4551); (EMO 7, ECF No. 4596); (ECF No. 8, ECF No. 4617); (EMO 10, ECF No. 4808).

Mr. Vigneron directs his current motion to the exclusion of the report and anticipated

testimony of Dominik Alexander, PhD, M.P.H. (Expert Rep. of Dominik Alexander, ECF No.

4639-1; Dominik Alexander Dep., ECF No. 4651.) Mr. Vigneron's motion is fully briefed and

ripe for decision.

## II.

In *Daubert v. Merrell Dow Pharmaceuticals, Incorporated*, 509 U.S. 579 (1993), the

United States Supreme Court held that the Federal Rules of Evidence, in particular Rules 702

and 104(a), govern the admission of expert witness testimony and require that the trial judge

"ensure that any and all scientific testimony or evidence admitted is not only relevant, but

reliable." *Daubert,* 509 U.S. at 589. Because Rule 702 "requires that the evidence or testimony

4

'assist the trier of fact to understand the evidence,'" expert testimony "which does not relate to any issue in the case is not relevant and ergo, nonhelpful." *Daubert*, 509 U.S. at 590–90. "In other words, there must be a 'fit' between the proposed testimony and the question(s) presented by the case at bar." *Id.* at 591.

The burden is on the party proffering the expert report to demonstrate by a preponderance of proof that the opinions of their experts are admissible. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). A district court exercises its responsibility in acting as the "gatekeeper" for expert testimony. *Daubert*, 509 U.S. at 588; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). This role, however, is not intended to supplant the adversary system or the role of the jury. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531–32 (6th Cir. 2008). Arguments regarding the weight to be given any testimony or opinions of an expert witness are properly left to the jury. *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

### III.

Mr. Vigneron moves for exclusion of Dr. Alexander's opinions, arguing that they are irrelevant for several reasons. DuPont responds that "Dr. Alexander's opinions are directly relevant to the central issue of whether DuPont could have foreseen that injury was likely to result to someone in Mr. Vigneron's position as a result of exposure to community levels of C8 through drinking water, given the absence of epidemiologic studies supporting that connection during the relevant time." (Def.'s Mem. in Opp. at 1–2.)

The Court agrees that the central issue with regard to duty is whether DuPont could have foreseen that injury was likely to result to someone in Mr. Vigneron's position. However,

5

DuPont did not ask Dr. Alexander to evaluate the state of the epidemiologic science regarding injury risk from C-8 exposure. Instead, DuPont tasked Dr. Alexander with evaluating the "state-of-the-epidemiologic science *of testicular cancer risk*." (Alexander Rep. at 1) ("I have been requested by [DuPont] to provide a state-of-the-epidemiologic science of testicular cancer risk by performing a systematic meta-analysis and relative risk pattern assessment of the peer-reviewed literature published prior to 2012 that pertains to potential perfluoroctanoic acid (PFOA) exposure."). That inquiry, Mr. Vigneron contends, is irrelevant, and additionally is not "proper in light of the Court's prior rulings." (Pl.'s Reply at 2–3.) This Court agrees.

DuPont has previously presented its position on the relevance of DuPont's knowledge of the *type of injury* suffered by the *Leach* Class members in its opposition to the MDL Plaintiffs' Third Motion for Summary Judgment. (Def's Mem. in Opp. to Pl.'s Third Mot. for Summ. J., ECF No. 3202; Pls.' Third Mot. for Summ. J., ECF No. 2820.) In that motion, the MDL plaintiffs moved for global summary judgment on the issue of duty, which derives from foreseeability. *Id*. at 9 ("The Ohio test for foreseeability is '[w]hether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act'") (citing *The Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, No. 2:09-cv-01081, slip op. at 46 (S.D. Ohio Mar. 10, 2015) (quoting *Menifee v. Ohio Welding Prods., Inc.,*15 Ohio St.3d 75, 77 (1984)). The plaintiffs maintained that "'the existence and scope of a person's legal duty is determined by the reasonably foreseeable, general risk of harm that is involved,'" not by whether the precise injury is predicted to occur. *Id*. at 9–10 (citing *Cromer v. Children's Hosp. Med. Ctr. Of Akron*, 142 Ohio St.3d 257, 263 (2015); *Little Hocking*, No. 2:09-cv-01081, at 50 ("The standard is that injury is foreseeable, not that the precise injury is predicted to occur"). DuPont, however, disagreed, and in opposing the

plaintiffs' summary judgment motion argued, *inter alia*, that the relevant inquiry is whether a

reasonably prudent person would have foreseen the *exact type of injury* claimed by the *Leach*

Class member:

> During the relevant timeframes of [plaintiff] Bartlett and [plaintiff] Wolf's alleged
> exposures (the years of exposure that they claim caused their injuries), no
> scientific literature even suggested that Trial Plaintiffs' *claimed illnesses [of
> kidney cancer and ulcerative colitis]* could be caused by relatively low,
> community levels of exposure to PFOA.

(Def.'s Mem. in Opp. to Pls.' 3 rd Mot. for Summ. J. at 13–14) (emphasis added).

In its decision on Plaintiffs' Third Motion for Summary Judgment, the Court explained

that whether DuPont anticipated or should have anticipated the *specific injury* sustained by a

*Leach* Class member is not the relevant inquiry:

> This "[C]ourt's task—in determining 'duty'—is not to decide whether a
> *particular* plaintiff's injury was reasonably foreseeable in light of a *particular*
> defendant's conduct, but rather to evaluate more generally whether the category
> of negligent conduct at issue is sufficiently likely to result in the kind of harm
> experienced that liability may appropriately be imposed on the negligent party."

(DMO 6 at 8, ECF No. 4184) (citations omitted; emphasis in original).

In denying the portion of the Plaintiffs' Third Motion for Summary Judgment regarding

foreseeability of harm, the Court addressed the relevant inquiry:

> The facts regarding the foreseeability of harm from DuPont's release of C-
> 8 from its Washington Works plant are in dispute. DuPont's position is that it
> "never had any knowledge or expectation . . . that there was *any* likelihood of *any*
> harm to community members at the relatively low PFOA levels found outside the
> plant." (DuPont's Mem. in Opp. to Pls.' Third Mot. for Summ. J. at 14)
> [(emphasis by DuPont)]; (*see also* DuPont's Answer to Bartlett Compl. ¶ 232;
> ECF No. 35) (DuPont avers that it "neither knew, nor should have known, that
> any of the substances to which [the Trial Plaintiffs were] allegedly exposed were
> hazardous or constituted a reasonable or foreseeable risk of physical harm by
> virtue of the prevailing state of the medical, scientific and/or industrial knowledge
> available to DuPont at all times relevant to the claims or causes of action asserted
> by [the Trial Plaintiffs].").  DuPont offers evidence and expert testimony to
> support its position, including scientific studies that were available during the

relevant time period, its own scientific studies analyzing the effects of C-8 on the surrounding environment, and records of its monitoring of its workers.

*Id*. at 8–9.

Consequently, the evidence that DuPont seeks to offer in the *Vigneron* trial is directed at an irrelevant issue and, if permitted, would circumvent this Court's prior ruling on the legal issue to be presented to the jury. *Daubert*, 509 U.S. at 590–90 (expert testimony "which does not relate to any issue in the case is not relevant and ergo, nonhelpful"); *see also* Fed. R. Evid. 403 (exclusion based on, *inter alia*, "confusing the issues, misleading the jury, undue delay, wasting time"). Accordingly, the first four opinions of Dr. Alexander, which are each directed at the foreseeable risk of testicular cancer from C-8 are excluded as irrelevant:

> 1. The epidemiologic evidence did not support, at any point prior to 2012, a conclusion that *testicular cancer risk* would be increased among persons with C8 exposure.
>
> 2. Only three pre-2012 publications, representing two occupational study populations with known exposure to C8, were identified that *reported data on testicular cancer*, and only two testicular cancers were observed in these two worker populations.
>
> 3. No statistically significant associations of *testicular cancer* among workers with known and relatively high exposure to C8 were reported in the pre-2012 studies.
>
> 4. Insofar as *no increased risks of testicular cancer* had been observed among C8-exposed workers, there would have been no valid scientific basis prior to 2012 to conclude that community residents with substantially lower C8 exposure than C8-exposed workers would be at *greater risk of testicular cancer*.

(Alexander Report at 3, ECF No. 4639-1) (emphasis added).

The fifth opinion, however, is directed at the state of the state-of-the-epidemiologic science regarding PFOA and increased risk of disease prior to 2012. In his last opinion, Dr. Alexander states:

8

> 5. The state-of-the-epidemiologic science prior to 2012 did not support the conclusion that PFOA was likely to cause an increased risk of any disease endpoints in humans at community exposure levels.

*Id.* This opinion is relevant to the inquiry of whether DuPont had any knowledge or expectation

that there was any likelihood of any harm to community members at what DuPont characterizes

as "the relatively low PFOA levels found outside the plant."

### IV.

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN**

**PART** Plaintiff's Motion to Exclude the Opinions and Testimony of Defense Expert Dominik D.

Alexander, Ph.D., M.P.H. (ECF No. 4652), in accordance with this decision.

    **IT IS SO ORDERED.**

    11-10-2016
**DATE**

            **EDMUND A. SARGUS, JR.**
            **CHIEF UNITED STATES DISTRICT JUDGE**